## Case No. 1,625.

### BONDHOLDERS v. RAILROAD COM'RS.

[1 Month. West. Jur. 188.]

Circuit Court, D. Wisconsin. July 4, 1874.

EQUITY JURISDICTION — CONSTITUTIONAL LAW — RAILROAD COMPANIES—REGULATION OF RATES.

[1. Equity has jurisdiction of a bill by bondholders to enjoin railroad commissioners from putting in force a statute alleged to be unconstitutional, and injurious to their rights.]

[2. The Wisconsin statute of March 11, 1874, regulating railroad traffic, was not repealed by either of the acts of the following day, which contain some provisions apparently inconsistent with it; it appearing that, by joint resolution of the latter date, the act of the 11th was not to be published until April 28th, and that, in Wisconsin, general statutes go into effect only after publication.]

[3. A constitutional provision that the charters of railroad corporations may be altered or repealed by the legislature at any time after their passage is to be read into all subsequent railroad charters, and into all contracts and mortgages made by such railroad companies, so that every creditor and mortgagee is affected with notice thereof.]

[4. The operation of this principle is not affected by the fact that a railroad company, under authority of the legislature, consolidates with a company chartered by another state.]

[5. Constitutional power in a legislature to alter all railroad charters thereafter granted war-

rants an alteration reducing traffic rates, although this diminishes the value of franchises and tangible property, the latter of which could not be directly taken without compensation.]

[6. In such case, the fact that grants of land were made by congress to the state to promote the building of a railroad thus affected cannot change the rights of the corporation or its creditors and mortgagees.]

[7. Quaere. Whether the carriage of freight into one state from another, or out of the state into another, not being a mere transit through the state, is interstate commerce, so that the carriage within the state is beyond its power of regulation. See Leisy v. Hardin, 135 U. S. 100, 10 Sup. Ct. 681, and cognate cases.]

[In equity. Bill brought by railroad bondholders against the railroad commissioners of the state of Wisconsin to enjoin them from executing the state act of March 11, 1874, known as the "Potter Act." On motion for preliminary injunction. Denied.]

DRUMMOND, Circuit Judge. We have not had time to prepare any opinion in the case, but, as it was thought desirable that there should be a decision upon the motion for an injunction, I am instructed by the court to present the following as its conclusions upon the points made for a preliminary injunction:

1. On the assumption that the act of the 11th of March, 1874, "relating to railroads, express and telegraph companies in the state of Wisconsin" is invalid, we think the court has jurisdiction of the case. The bill is filed on behalf of citizens of Europe and of other states to enforce equitable rights, and to prevent action by the railroad commissioners which may result, as alleged, in serious injury to those rights. It was not necessary to wait until the commissioners had put the law in full operation, and its effects upon the railroad company had become complete, before the application against them was made to a court of equity. A very important function of that court is to prevent threatened wrong to the rights of property.

2. We are of opinion that the act of the 11th of March, mentioned above, was not repealed by the act of the 12th of March, 1874, the second section of which declares: "All existing corporations within this state shall have and possess all the powers and privileges contained * * * in their respective charters;" and the act of the 12th of March, 1874, the ninth section of which imposes a penalty for extortionate charges. There are apparent inconsistencies between these last two named acts and that of the 11th of March; but it becomes a question of intendment on the part of the legislature. On the same day a joint resolution was passed (March 12th), directing the secretary of state not to publish the act of the 11th of March until the 28th of April. In this state no general law is in force until after publication. We may consider the joint resolution in order to determine whether the legislature intended that the two acts passed on the same day should repeal the act of the 11th of March, and from that it is manifest such was not the intention of the legislature.

3. The charters of the railroad corporations under the constitution of Wisconsin "may be altered or repealed by the legislature at any time after their passage." In legal effect, therefore, there was incorporated in all the numerous grants under which the Northwestern Railway Company now claims its rights of franchise and property in this state the foregoing condition contained in the constitution. It became a part, by operation of law, of every contract or mortgage made by the company, or by any of its numerous predecessors, under which it claims. The share and bond holders took their stock or their securities subject to this paramount condition, and of which they, in law, had notice. If the corporation, by making a contract or deed of trust on its property, could clothe its creditors with an absolute, unchangeable right, it would enable the corporation, by its own act, to abrogate one of the provisions of the fundamental law of the state.

4. This principle is not changed by authority from the legislature of the state to a corporation to consolidate with a corporation of another state. The corporation of this state is still subject to the constitution of Wisconsin, and there is no power any where to remove it beyond the reach of its authority.

5. As to the rates for the transit of persons and property exclusively within the limitations of this state, the legislature had the right to alter the terms of the charter of the Northwestern Railway Company, and the fact that such alteration might affect the value of its property or franchise cannot touch the question of power in the legislature. The repeal of its franchise would have well-nigh destroyed the value of its tangible property; and while the latter, as such, could not be taken, still its essential value for use on the railroad would be gone.

6. The facts that grants of land were made by congress to the state cannot change the rights of the corporations or of the creditors. If the state has not performed the trust, it must answer to the United States.

7. The act of the 11th of March, 1874, while not interfering with the rates of freight on property transported entirely through the states to and from other states, includes within its terms property and persons transported on railroads from other states into Wisconsin, and from Wisconsin into other states. This act either establishes or authorizes the railroad commissioners to establish fixed rates of freight and fare on such persons and property. The Case of State Freight Tax, reported in 15 Wall. [82 U. S.] 232, decides that this last described traffic constitutes "commerce between the several states," and that the regulation thereof belongs exclusively to congress. It becomes,

therefore, a very grave question whether it is competent for the state arbitrarily to fix certain rates for the transportation of persons and property of this interstate commerce, as the right to lower rates implies also the right to raise them. There may be serious doubts whether this can be done. This point was not fully argued by the counsel, and scarcely at all by the counsel of the defendants; and, under the circumstances, we do not at present feel warranted, on this ground alone, to order the issue of an injunction. If desired by the plaintiffs, it may be further considered at a future time, either on demurrer to the bill or in such other form as may fairly present the question for our consideration.

In view of the decision just rendered, we trust it will not be considered out of the line of our duty to make a suggestion concerning this litigation to the counsel for the defense. It is manifest that the questions involved are grave ones, and that the court of last resort will ultimately have to pass upon them. It is equally manifest that a speedy decision in which all parties are vitally interested, cannot be obtained unless there is harmony of action on the part of both the complainants and defendants. In the mean time, and while this litigation is in progress, would it not be better for the defendants, as far as lies in their power, to have prosecutions for penalties suspended? These prosecutions are not required to settle rights. They are attended with great expense, and, if enforced while an effort is making in good faith to test the validity of this legislation, must cause serious irritation, and cannot be, as it seems to us, productive of any good results.